The 23 December 1996 decision by the North Carolina Court of Appeals reversed the Full Commission's Opinion and Award, Commissioner Dianne C. Sellers dissenting, which was filed 21 September 1995. This matter initially came before the Full Commission upon the appeal of plaintiff from the 23 September 1994 Opinion and Award by former Deputy Commissioner Roger L. Dillard, Jr., in which plaintiff's claim was denied. The Deputy Commissioner's decision was in part based on a finding that plaintiff's testimony was not credible. The Full Commission reversed and awarded plaintiff compensation for his 17 December 1991 work related injury. Defendant then appealed to the Court of Appeals.
Upon appeal, the Court of Appeals found that the Full Commission had abused its discretion by not giving reasons regarding its reversal of the Deputy Commissioner's findings related to plaintiff's credibility. Based on this finding, the court reversed the Full Commission's Opinion and Award and remanded this case for further consideration of the Deputy Commissioner's Findings of Fact.
* * * * * * * * * *
The Full Commission has again reviewed this matter based upon the record of the proceedings before former Deputy Commissioner Roger L. Dillard, Jr., the briefs and oral arguments before the Full Commission and in compliance with the 23 December 1996 decision by the North Carolina Court of Appeals. No additional witness testimony was received by the Full Commission. Upon reconsideration of the evidence, the Full Commission files the following Opinion and Award, reversing the prior Opinion and Award by the Deputy Commissioner.
* * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing on 23 February 1994 as:
STIPULATIONS
1. At the time of the alleged injury by accident giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was duly qualified as self-insured.
4. Based upon the Form 22 Wage Chart submitted by the parties, plaintiff's average weekly wage at the relevant times herein was $300.00, yielding a compensation rate of $200.00 per week.
5. A group of medical records, consisting of 129 pages, and a vocational report, were stipulated into evidence by the parties.
* * * * * * * * * * *
The Full Commission, having reviewed the entire record of evidence, including the Deputy Commissioner's first hand observations of the witnesses, nonetheless rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. In December, 1991, plaintiff was employed by defendant-employer at its Broyhill Harper plant. At that time, plaintiff was fifty-two years old and had been employed by defendant for approximately thirty-two years.
2. On 17 December 1991, plaintiff was pulling a load of stock onto a flatbed truck at work as part of his normal job duties. As plaintiff was pulling the stock, the load got stuck on a bolt in the floor. Plaintiff had begun to push the truck when the standard which held the load on the truck broke. As a result, plaintiff twisted and fell to the floor in between the load on the truck. Plaintiff testified that he felt an immediate and severe onset of pain in his back that forced him to grab onto something for support until the pain subsided.
3. Following the accident, plaintiff had a co-worker assist him push his load because plaintiff was unable to do it by himself. Plaintiff testified that he notified his supervisor, Mr. Dwight Davis, that he had injured his back. At home that same evening, plaintiff could barely walk. The following day, plaintiff reported to work and attempted to perform his duties, but was unable to without the assistance of Mr. Morris Parsons, a co-worker. Mr. Parsons continued to assist plaintiff with his duties through the remainder of that week.
4. At the time of the injury in question, plaintiff did not understand the workers' compensation system or the filing requirements associated with it. Prior to filing his claim giving rise to this case, plaintiff believed that workers' compensation was only used when a worker was totally disabled. Plaintiff had been injured at work before the injury in question and had missed six to eight weeks of work, but did not file a claim. As for the injury in question, plaintiff filed for thirteen weeks of disability under his private insurance plan before filing his claim for workers' compensation.
5. The Deputy Commissioner who initially heard this matter found plaintiff's sworn testimony regarding the cause and extent of his injury not to have been credible. The Full Commission, however, finds to the contrary, that plaintiff's testimony relating to his injury and its cause was credible. The Full Commission's finding on this issue is based, in part, on plaintiff's lack of understanding in general of the workers' compensation system and with the specific requirements related to reporting his injury and filing his claim. Additionally, the Full Commission finds that any inconsistencies in plaintiff's testimony are not indicative of any deception on his part, and further, are reasonably explained given his unfamiliarity with the workers' compensation system and the nature of the proceedings before the Industrial Commission.
6. The Full Commission, having found plaintiff's testimony relating to his injury and its cause to be credible, finds that testimony contradicting that of plaintiff's by Mr. Davis was not credible. In doing so, the Full Commission notes that as plaintiff's supervisor on behalf of defendant-employer, Mr. Davis testified at the hearing on behalf of defendant-employer and was, therefore, an adversary witness against plaintiff's claim.
7. The week after his work related injury, plaintiff had time off for Christmas vacation. Throughout this vacation period, plaintiff experienced continual pain from his back and spent most of his time in bed. Plaintiff reported to work after Christmas and attempted to perform his duties for two days before the pain he was experiencing forced him to take time off. Plaintiff then called Ms. Reba Cobb, the insurance clerk and nurse at his plant, to inform her that he was injured and unable to report to work.
8. Ms. Cobb had worked with plaintiff for sixteen years and testified that she believed plaintiff to be a truthful and honest person. Due to his initial misunderstanding regarding the workers' compensation system, plaintiff had not informed her that his injury was work related. Consequently, while under the belief that plaintiff's injury was not work related, Ms. Cobb assisted him with filing for short term disability and in filing his medical bills under his group health insurance.
9. The incident on 17 December 1991, was an interruption of plaintiff's normal work routine and was a specific traumatic incident resulting in an injury by accident arising out of and in the course of his employment with defendant-employer.
10. Plaintiff's failure to provide written notice to the employer of his injury within the thirty days is reasonably excused and did not prejudice defendant in any manner. Defendant had actual knowledge of plaintiff's injury through his reporting it to his supervisor, Mr. Davis.
11. Plaintiff went to see his family doctor, Dr. Kenneth Carpenter on or about 2 January 1992. Plaintiff reported to Dr. Carpenter that he was experiencing pain in the middle of his back that was radiating down his right leg. Dr. Carpenter prescribed cortisone, took x-rays and began physical therapy. However, this conservative treatment did not help plaintiff's condition and he experienced increased pain. Plaintiff was then referred to Dr. David Jones, a neurosurgeon.
12. Plaintiff informed Dr. Carpenter that he had been injured at work in December, just prior to Christmas, when he as straining to push a furniture truck. That plaintiff gave this history to Dr. Carpenter is corroborated by the doctor's office notes of 5 February 1992. These notes also record that as a result of plaintiff's work related injury, "[plaintiff] felt a strain and pain in his sacroiliac and buttock region."
13. On 6 February 1992, Dr. Jones performed a lumbar laminectomy and diskectomy on plaintiff for a herniated disk. Following the surgery, however, plaintiff continued to experience severe pain in his back throughout the course of treatment by Dr. Jones, which continued until August 1992. Dr. Jones also advised plaintiff to begin physical therapy exercises and prescribed pain medication.
14. On 13 August 1992, Dr. Jones wrote a letter to defendant-employer reporting that plaintiff had undergone back surgery and that he was experiencing persistent pain due to "myofacial pain, low-grade inflammation, and nerve dysfunction." This letter also noted that plaintiff was experiencing anxiety related to his injury and physical disabilities. Dr. Jones advised defendant-employer that plaintiff was "totally disabled" and that plaintiff would "not be able to return to a position requiring manual labor."
15. Dr. Jones later referred plaintiff back to Dr. Carpenter. Eventually, plaintiff was referred to Ms. Andrea Stutzman, a physical therapist. Plaintiff attempted to do the exercises suggested by Ms. Stutzman and was given a TENS unit for pain control. Despite this treatment, plaintiff experienced increased pain. The medical records in evidence confirm that plaintiff was continuing to experience extreme pain at this time and that he was still receiving pain medication.
16. Subsequently, plaintiff was referred to Dr. Larry A. Pearce, who treated plaintiff from September, 1992 until October, 1993. Dr. Pearce diagnosed plaintiff with lumbar radicultis, chronic myofacial pain syndrome and myokyrnia. In his notes, Dr. Pearce recorded that "plaintiff developed low back pain while pushing and pulling heavy loads in December 1991." These notes further record that plaintiff had been experiencing "progressive pain intensity involving the right sciatic area hip, leg and toes," that plaintiff had been wearing a TENS unit as well as receiving pain medication. Plaintiff was described in these notes as having difficulty walking, sitting, stooping and twisting as the result of his back injury.
17. Contrary to defendant's contentions, the medical records in evidence do not indicate that plaintiff had a substance abuse problem or that he was intentionally abusing his pain medication. In fact, the medical records indicate that plaintiff's treating physicians prescribed medication appropriately and that plaintiff used these medications only as prescribed.
18. On 11 October 1993, plaintiff was evaluated by Vocational Consultants at Blue Ridge Vocational Services. After extensive testing, the consultants concluded that plaintiff had a "great difficulty with any physical exertion," and that plaintiff had an extremely low tolerance for sitting and standing. Further, the consultants concluded that plaintiff was not capable of returning to his prior position with defendant-employer. Plaintiff is noted by the consultants to have cooperated fully and that he gave no indication of deception.
19. Although plaintiff was seen by a series of physicians and therapists, each was seen upon a valid medical referral. The Full Commission finds that plaintiff was not attempting find a medical provider to support his claim, but rather was following the recommendations and referrals of his medical providers in an attempt to improve his condition.
20. As the result of his injury by accident, plaintiff has been incapable of earning wages in his former position with defendant-employer or in any other employment from 17 December 1991 through the date of this Opinion and Award.
21. Plaintiff's average weekly wage on 17 December 1991 was $300.00, yielding a compensation rate of $200.00.
* * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving a specific traumatic incident on 17 December 1991. G.S. § 97-2(6).
2. Plaintiff's average weekly wage on 17 December 1991 was $300.00, yielding a compensation rate of $200.00. G.S. § 97-2(5).
3. Plaintiff's failure to provide written notice to defendant within thirty days of his injury is reasonably excused and defendant, who had actual knowledge of plaintiff's work related injury, was not prejudiced thereby in any manner. G.S. §97-22
4. As the result of his injury by accident, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $200.00 per week for the period of 17 December 1991 through present and continuing until plaintiff returns to work at his former wage level or until further order by the Industrial Commission. G.S. § 97-29.
5. As the result of his injury by accident, plaintiff is entitled to have defendant pay for all reasonable medical expenses incurred or to be incurred. G.S. § 97-25.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to the attorney's fee hereinafter approved, defendant shall pay plaintiff temporary total disability compensation at the rate of $200.00 per week for the period of 17 December 1991 through present and continuing until plaintiff returns to work at his former wage level or until further order by the Industrial Commission. The amount of compensation which has accrued shall be paid to plaintiff in a lump sum.
2. Defendant shall pay all reasonable medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff herein is approved for plaintiff's counsel. From the amount of compensation having accrued, this fee shall be deducted and paid directly to plaintiff's counsel who shall receive every fourth check payable to plaintiff thereafter.
4. Defendant shall pay the costs.
 S/ ___________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________ COY M. VANCE COMMISSIONER
S/ ___________________ DIANNE C. SELLERS COMMISSIONER